# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Case No. 20-3031-06-CR-S-SRB |
| HOLLI S. LAROSE, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Before the Court is the Motion to Suppress filed by Defendant Holli S. Larose. (Doc. 136.) Pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1, the action was referred to the undersigned for preliminary review. Defendant moves to suppress "as evidence all items seized pursuant to a search warrant executed" at Defendant's residence at 2050 North Boonville Avenue, Springfield, Missouri, on December 11, 2019. (Doc. 136.) The Court held a hearing on the Motion on January 22, 2021. (Docs. 159, 161.) Defendant was present with her attorney, Donald R. Cooley, and the United States was represented by Jessica R. Sarff. At the hearing, the Court heard testimony from Benjamin Lord, a detective with the Springfield Police Department (SPD) in the special investigations section in the narcotics unit. (Doc. 161 at 4.) For the reasons set forth below, it is hereby **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED.**

### I. Findings of Fact[1]

In October 2019, Officer Evan Nicholson contacted Det. Lord regarding a community complaint alleging that "2050 North Boonville was a drug house" and that "there was heavy traffic

---

[1] The facts set forth herein are taken from the testimony adduced at the hearing on the instant Motion and the exhibit admitted during the hearing. (Docs. 160, 161.)

making short stops at the residence."[2] (Doc. 161 at 6-7.) Officer Nicholson informed Det. Lord that he briefly followed up on the complaint and spoke to Defendant, who stated that she lived at the 2050 N. Boonville residence (the "Boonville residence"). *See id.* at 7. Det. Lord began investigating the Boonville residence. *Id.* at 8. Det. Lord was already familiar with Defendant because in April 2019, he was present when a search warrant was executed at her prior residence where methamphetamine was seized. *Id.* at 10.

Between October 2019 and December 2019, Det. Lord surveilled the Boonville residence four to five times for approximately 30 minutes each time. *Id.* at 9. On each occasion, Det. Lord observed "come-and-go traffic from the residence" where vehicles would "arrive at the residence, stay a short amount of time, and then depart." *Id.* Based on his experience as an officer, Det. Lord stated that such traffic in a residential neighborhood is often "indicative of drug distribution . . . There is [] no other reason for that amount of traffic to make short visits at the residence." *Id.* During surveillance on December 10, 2019, Det. Lord observed a green Toyota Corolla arrive at the residence and park in the driveway. *Id.* Soon thereafter, he saw a male walk from the "house/shed area" of the property to the vehicle and leave the residence. *Id*. at 12, 24. Det. Lord followed the vehicle and conducted a traffic stop after observing lane and speeding violations. (*Id.* at 12; Doc. 160, Exh. 1, Affidavit at 3.) During the stop, the driver of the vehicle, Tony Forrester, consented to a search of his vehicle, and Det. Lord seized methamphetamine from underneath the driver's seat. (Doc. 161 at 12, 17-18.) Mr. Forrester stated that he had obtained the methamphetamine from a "friend," and Det. Lord did not ask Mr. Forrester whether the

---

[2] At the hearing, Defendant raised a continuing objection to Det. Lord's testimony on material not in the affidavit to the search warrant. (Doc. 161 at 10.) The Government noted that the testimony goes to Det. Lord's knowledge at the time he applied for the search warrant under its Leon good-faith argument. *Id.* at 7-8.

methamphetamine was obtained from Defendant at the Boonville residence in order to protect the ongoing investigation. *Id.* at 11-13, 19.

Almost a week prior, on December 4, 2019, Det. Lord was present for an incident at another residence at 2540 North Delaware Street where a male was arrested with methamphetamine on his person. *Id.* at 11. During the incident, a female inside the residence advised officers that the methamphetamine seized from the male was obtained from Defendant. *Id.*

As a part of his investigation, Det. Lord conducted a City Utilities check on the Boonville residence, and found the account was registered to Aaron Smith. *Id.* at 14. Det. Lord also conducted criminal history checks on Defendant and Aaron Smith and discovered that both individuals had past arrests for distribution or delivery of a controlled substance. *Id.* at 13.

Based on the investigation, Det. Lord applied for and received a no-knock search warrant for Defendant's residence at 2050 N. Boonville Avenue on December 11, 2019. In his affidavit to the search warrant, Det. Lord stated:

> Within the last six months[,] I have received information of [Defendant] and Aaron Smith distributing methamphetamine from 2050 N. Boonville Avenue[.] I have conducted surveillance on this residence multiple times and have witnessed heavy vehicle traffic at the residence on each occasion. I know this type of vehicle traffic inside a residential neighborhood to often be indicative of drug distribution activity.
>
> Within the last five days[,] Det. J. Hollingsworth and I were working street enforcement in an unmarked police vehicle equipped with lights and a siren. [O]n 12-10-19, while conducting surveillance on 2050 N. Boonville Avenue[,] I witnessed a green Toyota Corolla bearing Missouri license plate FS3-F0K enter the driveway of 2050 N. Boonville. Approximately ten minutes later[,] I witnessed a male walk from the house/shed area of the property, enter the vehicle, and exit the driveway traveling southbound on Boonville. I conducted surveillance on this vehicle and witnessed the vehicle travel in the middle of the roadway for several blocks, west of the Atlantic/Broadway intersection before correcting back into the westbound lane. I also paced this vehicle at 40 MPH in a 30 M[PH] residential zone. I initiated a traffic stop on this vehicle near the intersection of Atlantic and Nettleton. I contacted the driver and sole occupant, Tony Forrester.
> . . .

> I asked Forrester if there was anything illegal inside the vehicle and he told me no. I asked Forrester if I could search his vehicle and he told me yes. Upon searching Forrester's vehicle, I located a small green bag under the front edge of the driver's seat. Upon unzipping the bag, I located a glass methamphetamine pipe that contained a burnt residue and a plastic bag that contained a small amount of crystalline substance. I immediately recognized the crystalline substance to be consistent with methamphetamine.
>
> I read Forrester the Miranda Warning and he told me he understood. I asked Forrester if the substance inside the green bag was methamphetamine and he told me yes. I asked Forrester if the methamphetamine belonged to him and he told me yes, stating that he had obtained the methamphetamine from a friend.
>
> City Utilities shows an active account under the name Aaron M. Smith at 2050 N. Boonville Avenue, Springfield, Greene County, MO.
>
> While conducting surveillance on 2050 N. Boonville Avenue[,] I have observed a surveillance camera mounted on the exterior of the residence.
>
> [Defendant]'s criminal history shows past arrests for Possession of a Controlled Substance, Receiving Stolen Property, Stealing, First Degree Tampering with Motor Vehicle, Fraud, Unlawful Possession of Drug Paraphernalia, Delivery of a Controlled Substance, Resisting/Interfering with Arrest, Unlawful Possession of a firearm, and Stealing a Firearm/Weapon.
>
> Smith's criminal history shows past arrests for Second Degree Child Molestation, Receiving Stolen Property, Theft, Third Degree Assault, Possession of a Controlled Substance, Distribute/Deliver/Manufacture a Controlled Substance, Possession of Marijuana, Unlawful Use of Drug Paraphernalia, Hindering Prosecution, Damage Jail Property, and Non-Support.

(Doc. 160, Exh. 1, Affidavit at 3-4.) A Greene County Judge issued the search warrant based on Det. Lord's affidavit, and no oral statement was provided in support of the application. (*Id.;* Doc. 161 at 21.)

The search warrant was executed later the same day on December 11, 2019, at the Boonville residence. Defendant was present during the search of the residence, and numerous items of methamphetamine, methamphetamine paraphernalia and cash were seized at the residence. (Doc. 161 at 14.) On March 11, 2020, a grand jury charged Defendant with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine and

possession with intent to distribute any amount of a mixture or substance containing a detectable amount of methamphetamine. (Doc. 11 at 2, 4.)

## II. Conclusions of Law

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Defendant moves to suppress evidence seized following the execution of the search warrant, arguing the warrant lacked probable cause. (Docs 136, 144.) The Government responds the warrant was supported by probable cause, and alternatively, that the *Leon* good-faith exception would preclude suppression of the evidence. (Doc. 138.) The Court addresses the parties' arguments below.

### a. The Warrant was Supported by Probable Cause

Defendant argues that the anonymous source information was not sufficiently reliable, nor adequately corroborated, to support a probable cause determination. "Probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Scott*, 610 F.3d 1009, 1013 (8th Cir. 2010) (internal quotation marks and citations omitted). A court determines whether probable cause exists by looking at the totality of the circumstances, and "[j]udges may draw reasonable inferences . . . in determining whether probable cause exists to issue a warrant." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). A totality-of-the-circumstances analysis prohibits an "excessively technical dissection of informants' tips" that views "bits and pieces of information in isolation." *United States v. Buchanan*, 574 F.3d 554, 562 (8th Cir. 2009) (internal quotation marks and citations omitted).

"When the issuing judge relied solely upon a supporting affidavit to issue the search warrant," as in this case, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause. *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020) (citation omitted). Furthermore, courts examine affidavits "with a common sense approach and not in a hypertechnical fashion." *United States v. O'Dell*, 766 F.3d 870, 873-74 (8th Cir. 2014). A reviewing court pays deference to the issuing judge's probable cause determination and simply ensures that the judge had a "substantial basis" for concluding that probable cause existed. *Id.* at 873.

The Government acknowledges that anonymous information is "insufficient in itself to support a finding of probable cause." (Doc. 138 at 4.) (citing *United States v. Wells*, 223 F.3d 835, 839 (8th Cir. 2000). Rather, officers must "engage in suitable corroboration of the alleged criminal activity." *Wells*, F.3d at 839. That corroboration must indicate that the anonymous information contains sufficient indicia of reliability. *Id.* Only with corroboration that the anonymous tip is reliable can it establish probable cause. *See id.*

Here, the affidavit fails to state that another officer provided the information that Defendant and Aaron Smith were "distributing methamphetamine from 2050 N. Boonville Avenue" to Det. Lord based on a community complaint in October 2019. As Defendant avers, neither the source nor the reliability of the aforementioned information is detailed in the affidavit, and thus, the undersigned will treat the information as from an anonymous source since the Court is limited by the four corners of the affidavit in its probable cause analysis. *Roberts*, 975 F.3d at 713.

The affidavit does, however, describe Det. Lord's independent investigation of the "anonymous source" information, which supports its reliability. *See Wells*, 223 F.3d at 839. Specifically, Det. Lord stated that he surveilled the Boonville residence "multiple times" and

"witnessed heavy vehicle traffic at the residence on each occasion," which in his experience as an officer in the narcotics unit is indicative of drug distribution activity in a residential neighborhood. *See United States. v. Roberts*, 787 F.3d 1204, 1209 (8th Cir. 2015) ("[O]fficers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." (internal quotation marks and citation omitted)). Det. Lord also detailed his surveillance on December 10, 2019, which resulted in the traffic stop of a green Toyota Corolla ten minutes after it left the Boonville residence, and the subsequent seizure of methamphetamine from that vehicle. Mr. Forrester, the driver and sole occupant of the vehicle, stated that he obtained the methamphetamine from a "friend."

Defendant argues that there was a lack of evidence showing criminal wrongdoing at the residence or by Defendant. However, the undersigned notes that a great degree of corroboration is not necessary and need not "extend to illegal activity." *United States v. Reivich*, 793 F.2d 957, 960 (8th Cir. 1986). "Even the corroboration of minor, innocent details" can provide sufficient indicia of reliability to support probable cause. *Buchanan*, 574 F.3d at 562. Here, although the methamphetamine was not explicitly linked to the Boonville residence or Defendant, the undersigned finds that given the information of drug activity at the Boonville residence, the short nature of Mr. Forrester's visit to the Boonville residence, the seizure of methamphetamine from his vehicle at a traffic stop immediately thereafter, as well as Mr. Forrester's statement that it was from a "friend," the totality of circumstances would support a reasonable inference that the methamphetamine seized was obtained at the Boonville residence. *See Wallace*, 550 F.3d at 732.

In addition, Det. Lord noted in his affidavit that Aaron Smith was listed as the City Utilities account holder at the Boonville Avenue residence. And, a criminal history check of Defendant and Aaron Smith showed past arrests for possession of a controlled substance, unlawful possession

of drug paraphernalia, and delivery of a controlled substance. *See United States v. Solomon*, 432 F.3d 824, 828 n. 2 (8th Cir. 2005) (finding that an affidavit's recitation of a defendant's criminal history increases the credibility of a tip (citation omitted)). These facts taken together, instead of viewed as "bits and pieces of information in isolation," support a finding of probable cause. *Buchanan*, 574 F.3d at 562.

Defendant takes issue with the lack of a specific time frame for the information in the affidavit. Specifically, Defendant argues that the anonymous information that Defendant was distributing methamphetamine from the residence "within the last six months" does not provide a specific time frame for the alleged distribution activities and that Det. Lord does not state precisely when his surveillance of the residence occurred. "The date of the occurrence of the facts relied upon in an affidavit is of importance in the determination of probable cause because untimely information may be deemed stale." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (citation omitted). However, staleness is not determined by a bright-line test, but rather is "examined in the context of the specific case and the nature of the crime under the investigation." *Id.* (citation omitted).

"A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Johnson*, 848 F.3d 872, 877 (8th Cir. 2017) (internal quotation marks and citations omitted). There is no "fixed formula for deciding when information has become stale, but [the court] consider[s] the nature of the crime being investigated and the property to be searched." *United States v. Nieman*, 520 F.3d 834, 839 (8th Cir. 2008) (internal quotation marks and citation omitted). "In investigations of ongoing narcotic operations, intervals of weeks or months between the last described act and the application

for a warrant does not necessarily make the information stale." *United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) (alteration, internal quotation marks, and citation omitted). "A lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated." *Johnson*, 848 F.3d at 877 (internal quotation marks and citations omitted).

Here, the only timing question is whether the information in the warrant was not sufficiently close in time to the issuance of the warrant. As detailed in the warrant application, Det. Lord had reason to believe that Defendant sold methamphetamine in the *last six months* based on information he received. Given the nature of narcotics operations, as here, the passage of six months does not necessarily make the information stale. *Smith*, 266 F.3d at 905. In fact, Det. Lord's subsequent investigation suggests that continued drug distribution activity was taking place at the Boonville residence, given the "heavy traffic" of vehicles on multiple occasions of surveillance at the residence, the criminal history of the residents, and the seizure of methamphetamine on December 10, 2019, from a vehicle that had recently left the residence. The day immediately following the traffic stop, Det. Lord submitted his application for a search warrant, obtained approval from a Greene County Judge, and executed the search warrant on the Boonville residence. The passage of one day between the recent corroborating surveillance and the application for a warrant supports finding that the information was not stale. Moreover, the likely ongoing drug activity further supports that the information in the warrant application was not stale.

Based on the above, the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of the search warrant. *See O'Dell*, 766 F.3d at 873. Considering the totality of the circumstances, the specific factual information set forth in the affidavit—

including the anonymous information, Det. Lord's independent investigation, and Smith and Defendant's known criminal histories—supported the kind of practical, common sense decision sufficient to find a fair probability that methamphetamine and evidence of drug distribution would be found at the residence.

### b. The *Leon* Good Faith Exception Applies

The Government argues, and the undersigned agrees, that even assuming probable cause was lacking based on Det. Lord's affidavit, the *Leon* good-faith exception would apply to preclude suppression of the evidence. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984). The exclusionary rule is intended to deter police misconduct and does not apply where "the police acted 'in objectively reasonable reliance'" of a search warrant issued by a judge or magistrate. *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting. *Leon*, 468 U.S. at 922). Evidence seized as a result of good-faith reliance will thus be admitted *unless*:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702-03 (8th Cir. 2017) (internal quotes omitted); *see also Leon*, 468 U.S. at 923. Notwithstanding its exceptions, the good-faith inquiry "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal in light of all the circumstances." *Herring*, 555 U.S. at 145 (internal quotes omitted). Circumstances include "what the affiant knew but did not include in the application for the warrant." *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010).

Here, the undersigned concludes that the four exceptions to good-faith reliance are not

applicable and that Det. Lord acted in good faith. First, Defendant does not argue, nor does the undersigned find, that Det. Lord knowingly and intentionally misled the issuing judge with a false statement. Although additional information was known to Det. Lord and not included in the affidavit, the affidavit was an accurate retelling of the investigation and there is no evidence that Det. Lord intentionally misled the issuing judge.

Second, the undersigned does not find that the issuing judge wholly abandoned her judicial role as a neutral party. "A judge abandons his or her judicial role when he or she does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer." *Ortiz-Cervantes*, 868 F.3d at 703 (internal quotation marks and citation omitted). "A judge abandons her judicial role by not reading the warrant or failing to recognize the warrant was unsigned or failed to identify the property to be searched." *Id.; United States v. Dickerman*, 954 F.3d 1060, 1067 (8th Cir. 2020). Further, a judge violates her obligation to be neutral if she has a "pecuniary interest in issuing the warrant" or she has "actively participated in the police investigation." *Dickerman*, 954 F.3d at 1067-68.

Here, there is no evidence that the issuing judge abandoned her role as a neutral and detached actor. The warrant identifies the address to be searched and what contraband was to be searched for. (Doc. 160, Exh. 1, Search Warrant at 1-2.) Both the affidavit and the warrant were signed and there is no evidence that the issuing judge had a conflict of interest inhibiting her neutrality or that she actively participated in the investigation. (Doc. 160, Exh. 1, Affidavit at 5-6; Search Warrant at 3.) Accordingly, the issuing judge properly performed her judicial role in evaluating the warrant application.

Defendant only argues that reliance on the good faith exception is misplaced because "it appears the issuing judge based [her] probable cause finding on both the information within the

four corners of the affidavit and from [sworn oral statements] given by the affiant" to the judge. (Doc. 144 at 4.) However, the undersigned has already found that no further oral testimony was presented for consideration and that the issuing judge relied solely on Det. Lord's affidavit in finding probable cause to issue the warrant. *See supra* Section I. As well, there is no evidence that the judge considered information other than the affidavit.

Third, the undersigned cannot conclude that the supporting affidavit was "so lacking in indicia of probable cause" that the reliance on the search warrant was "entirely unreasonable." As discussed in the previous section, the undersigned agrees that Det. Lord's affidavit detailed sufficient reasons that evidence of illegal drug activity would be found at the Boonville residence to support probable cause. Moreover, the affidavit here was also reviewed and approved by a prosecuting attorney and then reviewed and approved by the issuing judge. *See United States v. Hallam*, 407 F.3d 942, 947 (8th Cir. 2005) (holding that an officer may reasonably defer to the judgment of the prosecutors and the issuing judge that the affidavit provided probable cause). Det. Lord had no reason to question the issuing judge's probable cause determination, endorsed also by the prosecuting attorney. As such, the officer's belief that probable cause existed to search the residence cannot be "entirely unreasonable."

Fourth, the warrant was not so facially deficient that no police officer could reasonably presume the warrant to be valid. *See United States v. Carpenter*, 341 F.3d 666, 673 (8th Cir. 2003) (explaining that a warrant is facially deficient when it "fail[s] to particularize the place to be searched or the things to be seized"). Here, the warrant properly and unambiguously identifies the place to be searched as 2050 N. Boonville Avenue and the property to be searched for as methamphetamine and other paraphernalia. The warrant further includes detailed descriptions of the location and physical attributes of the residence and the contraband to be searched for, i.e.,

describing the residence as "the third structure south of Dale Street on the east side of Boonville Avenue" and the contraband as "methamphetamine, a crystalline substance and any other controlled substance." (Doc. 160, Exh. 1, Search Warrant at 1-2.) As discussed, Det. Lord thoroughly described his independent investigation to establish probable cause. The undersigned, thus, concludes that the warrant was not facially deficient.

Ultimately, it also cannot be said that a "reasonably well-trained officer would have known that the search was illegal in light of the circumstances." What the affiant *knew* but did not include in the warrant application is relevant in reviewing the totality of circumstances. At the hearing, Det. Lord testified to additional information he knew prior to obtaining the warrant, suggesting that Defendant was selling methamphetamine from the residence, although he failed to include such in his affidavit. Specifically, Det. Lord personally knew Defendant had a criminal history for drug activity, having been present for a search warrant executed at Defendant's prior residence in April 2019 where methamphetamine was seized. Additionally, in another incident at a residence on 2540 North Delaware Street on December 4, 2019, a male was arrested with methamphetamine on his person. A female at that residence informed officers that the methamphetamine seized was from Defendant.

Furthermore, in his affidavit to the search warrant, Det. Lord only stated that he received information "within the last six months" and that he observed "heavy traffic" on multiple occasions of surveillance that was indicative of drug activity in a residential neighborhood. However, Det. Lord elaborated that he received the information from Officer Nicholson based on a community compliant in October 2019, and Officer Nicholson confirmed that Defendant resided at the 2050 N. Boonville residence. Based on the information and his prior familiarity with Defendant's drug activity, Det. Lord surveilled the residence four or five times over a two-month period (October

2019 to December 2019), and on each occasion, he observed "come-and-go traffic from the residence" where vehicles would "arrive at the residence, stay a short amount of time, and then depart," which in his experience in narcotics investigations was indicative of drug distribution activity in a residential neighborhood. In light of all these circumstances, the undersigned cannot find that a reasonably well-trained officer would have known that the search was illegal.

Therefore, even if the warrant lacked probable cause, Det. Lord objectively and reasonably relied on the search warrant and the evidence obtained from the search should not be suppressed.

### III. Conclusion

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress (doc. 136) be **DENIED**.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: February 22, 2021